IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA


ROBERT OLIN MARSHALL,               )
                                    )
                                    )
                    Plaintiff,      )
                                    )
        vs.                         )
                                    )
ANDREW M. SAUL, Commissioner of Social  )
Security Administration,            )
                                    )        No. 4:18-cv-0043-HRH
                    Defendant.      )
_____)


O R D E R

This is an action for judicial review of the denial of disability benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434. Plaintiff Robert Olin Marshall has timely filed his opening brief,[1] to which defendant, Andrew M. Saul,[2] has timely responded. Oral argument was not requested and is not deemed necessary.

Procedural Background

On September 30, 2012, plaintiff filed an application for disability benefits under Title II of the Social Security Act, alleging that he became disabled on November 26, 2009.

_____

[1]Docket No. 17.

[2]Docket No. 19.

Plaintiff alleges that he was disabled because of knee, wrist, elbow, and left clavicle pain. Plaintiff's application was denied initially, and plaintiff requested a hearing. After administrative hearings on April 9, 2014 and July 9, 2014, an administrative law judge (ALJ) denied plaintiff's application. Plaintiff sought review of the ALJ's September 4, 2014 unfavorable decision. On February 17, 2016, the Appeals Council denied plaintiff's request for review. Plaintiff sought judicial review, and on March 31, 2017, the court reversed the Commissioner's final decision and remanded this matter for further proceedings. On June 30, 2017, the Appeals Council consolidated plaintiff's 2012 claim with a subsequent claim plaintiff filed on November 25, 2014 and ordered the ALJ to "consolidate the claim files, create a single electronic record and issue a new decision on the consolidated claims. . . ."[3] The ALJ held an administrative hearing on June 28, 2018, after which he denied plaintiff's claims. Plaintiff bypassed written exceptions, thereby leaving the ALJ's October 25, 2018 decision as the final decision of the Commissioner. On December 31, 2018, plaintiff commenced this action in which he asks the court to review the Commissioner's final decision.

<u>General Background</u>

Plaintiff was born on July 9, 1962. He was 47 years old on his alleged onset date. Plaintiff has a high school education. Plaintiff's past relevant work was as a pipe welder and pipe fitter.

_____

[3]Admin. Rec. at 930.

<u>The ALJ's Decision</u>

The ALJ first determined that plaintiff "last met the insured status requirements of the Social Security Act on December 31, 2014."[4]

The ALJ then applied the five-step sequential analysis used to determine whether an individual is disabled.[5]

At step one, the ALJ found that plaintiff "did not engage in substantial gainful activity during the period from his alleged onset date of November 26, 2009 through his date last

---

[4]Admin. Rec. at 772.

[5]The five steps are as follows:

> Step one: Is the claimant presently engaged in substantial gainful activity?  If so, the claimant is not disabled. If not, proceed to step two.
> Step two: Is the claimant's alleged impairment sufficiently severe to limit . . . h[is] ability to work?  If so, proceed to step three.  If not, the claimant is not disabled.
> Step three: Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R., pt. 404, subpt. P, app. 1?  If so, the claimant is disabled.  If not, proceed to step four.
> Step four: Does the claimant possess the residual functional capacity ("RFC") to perform . . . h[is] past relevant work?  If so, the claimant is not disabled.  If not, proceed to step five.
> Step five: Does the claimant's RFC, when considered with the claimant's age, education, and work experience, allow . . . h[im] to adjust to other work that exists in significant numbers in the national economy?  If so, the claimant is not disabled. If not, the claimant is disabled.

<u>Stout v. Comm'r, Soc. Sec. Admin.</u>, 454 F.3d 1050, 1052 (9th Cir. 2006).

-3-

insured of December 31, 2014. . . ."[6]

At step two, the ALJ found that "[t]hrough the date last insured, the claimant had the following severe impairments: osteoarthritis status-post total right knee replacement, history of left clavicle pain, lumbar spondylosis, and lateral epicondylitis (tennis elbow) in the right elbow. . . ."[7] The ALJ found that complex regional pain syndrome was not a medically determinable impairment.[8] The ALJ found plaintiff's obesity, left knee pain, wrist pain, and hernia to be non-severe impairments.[9] The ALJ also found plaintiff's depressive disorder to be non-severe.[10] The ALJ considered the "paragraph B" criteria and found that plaintiff had no limitations as to understanding, remembering or applying information; no limitations as to interacting with others; no limitations as to concentration, persistence, or pace; and no limitations as to adapting or managing oneself.[11]

At step three, the ALJ found that "[t]hrough the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the

---

[6]Admin. Rec. at 773.

[7]Admin. Rec. at 773.

[8]Admin. Rec. at 773.

[9]Admin. Rec. at 773.

[10]Admin. Rec. at 774.

[11]Admin. Rec. at 775.

severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1[.]"[12]

"Between steps three and four, the ALJ must, as an intermediate step, assess the claimant's RFC." Bray v. Comm'r of Social Security Admin., 554 F.3d 1219, 1222–23 (9th Cir. 2009). The ALJ found

> that, through the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) with the following exceptions. The claimant could frequently balance, occasionally climb ramps or stairs, stoop, kneel, crouch, and crawl. The claimant could never climb ladders, ropes or scaffolds. The claimant could frequently, not continuously, overhead reach with the left upper extremity. The claimant could have no exposure to unprotected heights and occasional exposure to hazardous machinery. The claimant could have frequent exposure to moving machinery. The claimant required a sit/stand option allowing him to alternate sitting/standing positions throughout the day without going off task.[[13]]

The ALJ gave little weight[14] to Dr. Vermillion's opinions.[15] The ALJ also gave little

---

[12]Admin. Rec. at 775.

[13]Admin. Rec. at 776.

[14]Admin. Rec. at 779.

[15]Dr. Vermillion did plaintiff's right knee replacement. On July 27, 2011, Dr. Vermillion released plaintiff for work with the following restrictions: 2 hours sitting at a time, 2 hours standing at a time, 30 minutes of walking, lifting 50 pounds intermittently, minimal squatting and kneeling, climbing as tolerated, and no jumping or running. Admin. Rec. at 337. On September 7, 2011, Dr. Vermillion released plaintiff for work with the following restrictions: "sitting as tolerated 20-40 minutes with a short break," "standing as tolerated 20-40 minutes with break," "walking as tolerated on level surfaces," "lifting 50 lbs intermittent," "stairs as tolerated," "kneeling minimal as tolerated," "climbing short ladders as tolerated," and no squatting, jumping, or running. Admin. Rec. at 334.

weight[16] to the opinions of physical therapist Carlson.[17]  The ALJ also gave little weight[18]

to Dr. Cobden's opinions[19] and Dr. Elson's opinion.[20]  The ALJ gave great weight[21] to Dr.

---

[16]Admin. Rec. at 779.

[17]On June 9, 2011, Carlson did a physical capacity evaluation and found that plaintiff could lift up to 100 pounds, could infrequently squat and kneel, was not limited as to sitting and standing, could climb and crawl occasionally, was not limited in his ability to work above shoulders, could walk for 30 minutes, and could occasionally use his feet for repetitive motion.  Admin. Rec. at 287-289.  On June 22, 2011, Carlson assessed plaintiff's "sitting and standing tolerance" and found that he "demonstrated the ability to sit and stand for alternating 20 minute time periods.  He reported significant increased low back pain and knee pain following 5 hours of these activities. . . .   [He] can tolerate no more than 2 hours of standing and 2 hours of sitting during an 8 hour period."  Admin. Rec. at 286.

[18]Admin. Rec. at 780-781.

[19]Dr. Cobden is an orthopedic surgeon.  On October 6, 2011, Dr. Cobden opined that plaintiff "should not return to welding."  Admin. Rec. at 394.  On July 14, 2014, Dr. Cobden opined that plaintiff was "totally and permanently disabled and prevented from performing the duties of any occupation for which he may be qualified by reason of training or experience[.]"  Admin. Rec. at 675.

[20]Dr. Elson was plaintiff's chiropractor.  On January 17, 2013, Dr. Elson wrote:

> My last treatment of Mr. Marshall took place on July 2, 2012, during which time I treated him for upper back pain.  However, I have been well aware of his ongoing problems with his knee. When I last saw the patient, he was hobbled badly by pain and [had] limited range of motion in that knee, and based on my observations at that time, I found it difficult to imagine him working at any job that would require him to stand or walk.

Admin. Rec. at 490.

[21]Admin. Rec. at 782.

Lebeau's opinion.[22]  The ALJ also gave great weight[23] to Dr. Holley's opinion.[24]  The ALJ

gave some weight[25] to the opinions of Dr. Anderson,[26] Dr. Provencher,[27] Dr. Kerr,[28] and Dr.

Chong.[29]  The ALJ gave little weight[30] to the lay testimony of plaintiff's wife.[31]

At step four, the ALJ found that "[t]hrough the date last insured, the claimant was

---

[22]Dr. Lebeau's opinion is discussed below in detail.

[23]Admin. Rec. at 783.

[24]On February 13, 2010, Keith Holley, M.D., examined plaintiff.  Dr. Holley opined
that "[t]he need for permanent physical restrictions is unclear at this point in time.  [Plaintiff]
is capable of employment in my opinion on a reasonably continuous basis with temporary
restrictions to a light or sedentary work capacity, with no prolonged kneeling, squatting, or
stair climbing."  Admin. Rec. at 2027.

[25]Admin. Rec. at 783-784.

[26]On February 12, 2011, Lowell Anderson, M.D., examined plaintiff.  Dr. Anderson
stated that "[i]t is premature to determine if there are permanent physical restrictions" and
that it was possible that plaintiff "may not have any permanent physical restrictions. . . ."
Admin. Rec. at 2018.

[27]On August 11, 2011, Matthew Provencher, M.D., examined plaintiff.  Dr.
Provencher opined that plaintiff "can return to full-time work in a light duty-type capacity,
however, with no stooping, crawling, ladders, climbing, or prolonged standing more than two
hours in an eight-hour day and avoiding impact activities."  Admin. Rec. at 2007.

[28]On July 13, 2012, Stewart M. Kerr, M.D. examined plaintiff. Dr. Kerr opined that
plaintiff could "do light duty type of work."  Admin. Rec. at 1160.

[29]On November 12, 2015, Dr. Chong examined plaintiff. Dr. Chong opined that
"[c]ontinued treatment to date has not enabled the examinee to return to employment, reenter
other employment, or relieve his pain."  Admin. Rec. at 2435.

[30]Admin. Rec. at 781.

[31]Plaintiff's wife submitted an affidavit dated July 11, 2014.  Admin. Rec. at 275-278.

unable to perform any past relevant work. . . ."[32]

At step five, the ALJ found that "[t]hrough the date last insured, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could perform," including working as a small parts assembler, a ticket taker, and a storage rental clerk.[33]

Thus, the ALJ concluded that plaintiff "was not under a disability, as defined in the Social Security Act, at any time from November 26, 2009, the alleged onset date, through December 31, 2014, the date last insured. . . ."[34]

## Standard of Review

Pursuant to 42 U.S.C. § 405(g), the court has the "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner. . . ."  The court "properly affirms the Commissioner's decision denying benefits if it is supported by substantial evidence and based on the application of correct legal standards."  Sandgathe v. Chater, 108 F.3d 978, 980 (9th Cir. 1997).  "Substantial evidence is 'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  Id. (quoting Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995)).  "'To determine whether substantial evidence

---

[32]Admin. Rec. at 784.

[33]Admin. Rec. at 784-785.

[34]Admin. Rec. at 785.

supports the ALJ's decision, [the court] review[s] the administrative record as a whole, weighing both the evidence that supports and that which detracts from the ALJ's conclusion.'" Id. (quoting Andrews, 53 F.3d at 1039). If the evidence is susceptible to more than one reasonable interpretation, the court must uphold the Commissioner's decision. Id. But, the Commissioner's decision cannot be affirmed "'simply by isolating a specific quantum of supporting evidence.'" Holohan v. Massanari, 246 F.3d 1195, 1201 (9th Cir. 2001) (quoting Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999)).

Discussion

Plaintiff first argues that the ALJ erred in giving Dr. Lebeau's opinion great weight but then failing to incorporate some of the limitations assessed by Dr. Lebeau. Dr. Lebeau opined that plaintiff could frequently lift/carry 10 pounds; occasionally lift/carry 20 pounds; could sit for six hours in a day, up to two hours at a time; could stand for two hours in a day, up to one hour at a time; could walk for one hour, up to 15 minutes at a time; could frequently reach on the left side; was unlimited as to using his feet to push/pull controls; could occasionally climb stairs/ramps; should never climb ladders/scaffolds; could frequently balance; could occasionally kneel, stoop, crouch, and crawl; could never work around unprotected heights; and could frequently work around moving mechanical parts.[35]

The ALJ gave great weight to Dr. Lebeau's opinion,[36] but plaintiff argues that the ALJ

_____

[35] Admin. Rec. at 819-821.

[36] Admin. Rec. at 782.

then failed to include in his RFC all of the limitations assessed by Dr. Lebeau. "The ALJ is required to consider all of the limitations imposed by the claimant's impairments[.]" Carmickle v. Commissioner, Social Sec. Admin., 533 F.3d 1155, 1164 (9th Cir. 2008). Because the ALJ did not do so here, plaintiff argues that the ALJ erred.

The ALJ found

> that, through the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) with the following exceptions. The claimant could frequently balance, occasionally climb ramps or stairs, stoop, kneel, crouch, and crawl. The claimant could never climb ladders, ropes or scaffolds. The claimant could frequently, not continuously, overhead reach with the left upper extremity. The claimant could have no exposure to unprotected heights and occasional exposure to hazardous machinery. The claimant could have frequent exposure to moving machinery. The claimant required a sit/stand option allowing him to alternate sitting/standing positions throughout the day without going off task.[37]

The ALJ did not include the express limitations for standing and walking that Dr. Lebeau assessed, explaining that "the limitations Dr. Lebeau opined with standing, walking, and sitting have been addressed with a sit/stand option."[38]

But, plaintiff argues that the sit/stand option does not adequately address Dr. Lebeau's opinion that he could only stand for two hours in a day, up to one hour at a time and could only walk for one hour, up to 15 minutes at a time. Plaintiff contends that the ALJ's RFC

---

[37]Admin. Rec. at 776.

[38]Admin. Rec. at 782.

indicates that he can do light work. "The full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday." SSR 83-10. Yet, Dr. Lebeau opined that plaintiff could only stand or walk, off and on, for approximately three hours a day. Plaintiff argues that a sit/stand option does not get around the fact that Dr. Lebeau opined that he could not meet the standing and walking requirements of light work. Plaintiff insists that because the ALJ gave Dr. Lebeau's opinion great weight, the ALJ should have included the standing and walking limitations assessed by Dr. Lebeau and that the ALJ's failure to do so was error.

As defendant points out, the ALJ did not find that plaintiff could do the full range of light work. Nevertheless, the ALJ erred here. The RFC is devoid of any specific limitations as to standing and walking. All it says is that plaintiff has the capacity to perform light work, which as set forth above, requires the ability to stand and walk, off and on, for about six hours a day. Dr. Lebeau opined that plaintiff only had the ability to stand and walk, off and on, for about three hours a day. There is a disconnect between Dr. Lebeau's opinion, to which the ALJ gave great weight, and the ALJ's assessed RFC. This disconnect is not adequately addressed by the sit/stand option as there may be a significant difference between being able to stand up for a few minutes and still stay on task, which is what the sit/stand option allows, and being able to walk or stand for a total of six hours in a workday. Because the sit/stand option does not adequately address the sitting and standing limitations Dr. Lebeau assessed, the ALJ erred as to Dr. Lebeau's opinion.

Plaintiff next argues that the ALJ erred in finding his pain and symptom statements less than credible. "An ALJ engages in a two-step analysis" in evaluating "a claimant's testimony regarding subjective pain or symptoms. . . ." Garrison v. Colvin, 759 F.3d 995, 1014 (9th Cir. 2014). "'First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged.'" Id. (quoting Lingenfelter v. Astrue, 504 F.3d 1028, 1035-36 (9th Cir. 2007)). "In this analysis, the claimant is not required to show 'that h[is] impairment could reasonably be expected to cause the severity of the symptom []he has alleged; []he need only show that it could reasonably have caused some degree of the symptom.'" Id. (quoting Smolen v. Chater, 80 F.3d 1273, 1282 (9th Cir. 1996)). "Nor must a claimant produce 'objective medical evidence of the pain or fatigue itself, or the severity thereof.'" Id. (quoting Smolen, 80 F.3d at 1282). "If the claimant satisfies the first step of this analysis, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of h[is] symptoms only by offering specific, clear and convincing reasons for doing so.'" Id. at 1014-15 (quoting Smolen, 80 F.3d at 1281). "This is not an easy requirement to meet: 'The clear and convincing standard is the most demanding required in Social Security cases.'" Id. at 1015 (quoting Moore v. Comm'r of Soc. Sec. Admin., 278 F.3d 920, 924 (9th Cir. 2002)).

> Effective March 16, 2016, the Commissioner superseded Social Security Rule ("SSR") 96-7p governing the assessment of a claimant's "credibility" and replaced it with a new rule, SSR 16-3p. See SSR 16-3p, available at 2016 WL 1119029. SSR

16-3p eliminates the reference to "credibility," clarifies that "subjective symptom evaluation is not an examination of an individual's character," and requires the ALJ to consider all of the evidence in an individual's record when evaluating the intensity and persistence of symptoms. Id. at *1-2. The Commissioner recommends that the ALJ examine "the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." Id. at *4. The Commissioner recommends assessing: (1) the claimant's statements made to the Commissioner, medical providers, and others regarding the claimant's location, frequency and duration of symptoms, the impact of the symptoms on daily living activities, factors that precipitate and aggravate symptoms, medications and treatments used, and other methods used to alleviate symptoms; (2) medical source opinions, statements, and medical reports regarding the claimant's history, treatment, responses to treatment, prior work record, efforts to work, daily activities, and other information concerning the intensity, persistence, and limiting effects of an individual's symptoms; and (3) non-medical source statements, considering how consistent those statements are with the claimant's statements about his or her symptoms and other evidence in the file. See id. at *6-7.

Cindy F. v. Berryhill, 367 F. Supp. 3d 1195, 1208 (D. Or. 2019).

The ALJ found plaintiff's pain and symptom statements less than credible because they were not supported by the objective medical evidence and were inconsistent with his daily activities. Plaintiff argues that these were not clear and convincing reasons.

As for plaintiff's daily activities, the ALJ noted that plaintiff "reported in 2015 that he could perform some basic activities of daily living, such as preparing simple meals,

-13-

driving if needed, and shopping in stores."[39]  But, the ALJ did not explain how these activities would translate into an ability to work full time.  To "conclude that a claimant's daily activities warrant an adverse credibility determination," the ALJ must "make 'specific findings relating to [the daily] activities' and their transferability. . . ." Orn v. Astrue, 495 F.3d 625, 639 (9th Cir. 2007) (quoting Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005)). As defendant concedes, "[t]he ALJ made no finding that [plaintiff's] activities were transferable to a work environment. . . ."[40]  Defendant's argument that this lack of finding is of no import is simply wrong.  If an ALJ discounts a claimant's pain and symptom statements based on the claimant's daily activities, the ALJ must explain how those activities would translate into the ability to work full time.  Because the ALJ did not do so here, this was not a clear and convincing reason for finding plaintiff's pain and symptom statements less than credible.

As for whether plaintiff's pain and symptom statements were consistent with the objective medical evidence, the "lack of medical evidence cannot form the sole basis for discounting pain testimony[.]" Burch, 400 F.3d at 681 (9th Cir. 2005).  Moreover, even if the objective medical evidence alone were a legally sufficient reason to discount plaintiff's pain and symptom statements, the ALJ's recital of the medical record lacked clear and convincing reasons for doing so.  While the ALJ recited some of the objective medical

---

[39]Admin. Rec. at 782.

[40]Defendant's Brief at 5, Docket No. 19.

-14-

evidence relating to plaintiff's physical impairments,[41] the ALJ provided little in the way of explanation as to why this evidence was inconsistent with plaintiff's statements. Other than to state that the medical evidence showed that plaintiff's right knee continually improved,[42] the ALJ did not explain how his interpretation of the medical evidence detracted from plaintiff's credibility.

The ALJ failed to give clear and convincing reasons for discounting plaintiff's statements. Thus, the ALJ erred in finding plaintiff's pain and symptom statements less than credible.

Because the ALJ erred as to plaintiff's pain and symptom statements and Dr. Lebeau's opinion, the court must determine whether to remand this matter for further proceedings or for an award of benefits. The court follows a three-step analysis to determine whether a remand for an award of benefits would be appropriate. "First, [the court] must conclude that 'the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion.'" Brown-Hunter v. Colvin, 806 F.3d 487, 495 (9th Cir. 2015) (quoting Garrison, 759 F.3d at 1020). "Second, [the court] must conclude that 'the record has been fully developed and further administrative proceedings would serve no useful purpose.'" Id. (quoting Garrison, 759 F.3d at 1020). "Third, [the court] must conclude that 'if the improperly discredited evidence were credited as true, the ALJ would

---

[41]Admin. Rec. at 777-781.

[42]Admin. Rec. at 777, 779.

be required to find the claimant disabled on remand.'" Id. (quoting Garrison, 759 F.3d at 1021).  But, "even if all three requirements are met, [the court] retain[s] 'flexibility' in determining the appropriate remedy" and "may remand on an open record for further proceedings 'when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act.'" Id. (quoting Garrison, 759 F.3d at 1021).

In his reply brief, plaintiff concedes that if the ALJ erred in not including Dr. Lebeau's standing and walking assessments in his RFC, then a remand for further proceedings would be appropriate because vocational expert testimony would be necessary to determine if there would be any jobs that plaintiff could perform.[43]  But because the ALJ also erred as to plaintiff's pain and symptom statements, a remand for benefits is appropriate here.  Plaintiff testified that during the relevant time period, he had approximately three bad days a week, days on which his pain was so bad he was debilitated.[44]  The vocational expert testified that if an individual were "unable to engage in sustained work activity for a full eight-hour workday on a regular and consistent basis," there would be no jobs that individual could perform.[45]  If plaintiff's pain was debilitating approximately three days a week, it follows that he would be unable to maintain a full-time work schedule on a regular and

---

[43]Reply Brief at 3, Docket No. 20.

[44]Admin. Rec. at 833.

[45]Admin. Rec. at 842.

consistent basis.  No further administrative proceedings are necessary here.  If his testimony

were credited as true, plaintiff would be disabled.

<u>Conclusion</u>

Based on the foregoing, the decision of the Commissioner is reversed and this matter

is remanded for an award of benefits.

DATED at Anchorage, Alaska, this 9th day of August, 2019.

/s/ H. Russel Holland\_\_\_\_\_
United States District Judge
